IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **DAVID EUGENE FORD,** § § § **Plaintiff,** § § **v.** § § **DIRECTOR, TDCJ-CID,** § § § **Defendant.** § | **CIVIL ACTION NO. 6:23-CV-00102-JDK-JDL** |

**REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

Petitioner David Eugene Ford, an inmate confined in the Texas prison system, proceeding *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2013 Smith County conviction. The petition was referred for findings of fact, conclusions of law, and recommendations for the disposition of the case. (Doc. No. 2.)

Upon review, for the reasons stated herein, the court recommends that the petition be **DENIED**, and that the case be **DISMISSED WITH PREJUDICE**. The court further recommends that Petitioner Ford be denied a certificate of appealability *sua sponte*.

**BACKGROUND**

**I.  Procedural History**

On or around August 10, 2012, Ford was indicted in Smith County, Texas for the felony offense of aggravated robbery with a deadly weapon. (Doc. No. 7-3, at 9.) Ford pleaded not guilty to the offense and proceeded to a trial on the merits and punishment. *Id.* at 153. On September 27,

2013, Ford was found guilty of the offense by a jury in cause number 114-1281-12, of the 114th Judicial District Court of Smith County, Texas, and was sentenced to 30 years in prison. *Id.*

Ford appealed the conviction to the Twelfth Court of Appeals, which affirmed his conviction on February 27, 2015. (Doc. No. 7-23); *see also Ford v. Texas*, No. 12-13-00308-CR, 2015 WL 858811 (Tex. App.—Tyler Feb. 27, 2015, pet. ref'd). The Texas Court of Criminal Appeals subsequently denied discretionary review on July 29, 2015. *See Ford*, 2015 WL 858811 (Tex. App.—Tyler Feb. 27, 2015, pet. ref'd). Ford acknowledges that he did not file a petition for certiorari in the United States Supreme Court. (Doc. No. 1, at 3.)

On November 20, 2018, Ford filed a state habeas application challenging his conviction. (Doc. No. 8-10, at 29.) The Texas Court of Criminal Appeals denied Ford's habeas application without written order on February 5, 2020. (Doc. No. 8-5); *see also Ex parte Ford,* WR-90,765-01 (Feb. 5, 2020, pet. denied). Ford filed a second state habeas application on February 2, 2021, which the Court of Criminal Appeals subsequently denied without written order on November 3, 2021. (Doc. No. 8-27, at 43; Doc. No. 8-26); *see also Ex parte Ford*, WR-90,765-04 (Nov. 3, 2021, pet. denied).

Ford filed this federal habeas petition on February 21, 2023. (Doc. No. 1, at 15); *see Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (holding that for purposes of determining the applicability of the AEDPA, a federal petition is filed on the date it is placed in the prison mail system).

## II. Ford's Petition

In his petition, Ford raises six grounds for relief:

(1) Ford's trial counsel was ineffective for (a) failure to investigate and prepare for trial, (b) failure to present exculpatory evidence, (c) failure to object to evidence, (d) failure to present a complete defense, (e) failure to subject the prosecution's case to the crucible of meaningful adversarial testing, (f) failure to present a

2

> defensive theory supported by the evidence; and (g) presenting a motion that precluded negative in-court identification;
>
> (2) The prosecution knowingly presented false testimony to wrongfully obtain Ford's conviction;
>
> (3) Ford was denied due process because he was not given access to a law library or any legal materials to aid in the preparation of his *pro se* appellate brief on direct appeal;
>
> (4) Ford was denied due process because the Smith County District Court Clerk failed to provide Ford with a copy of the State of Texas's answers and objections to Ford's first state habeas application or the state habeas judge's findings of fact and conclusions of law;
>
> (5) Ford's appointed state habeas counsel was ineffective for (a) failure to investigate and prepare for the habeas hearing, (b) failure to present exculpatory evidence, (c) failure to assist Ford with supplemental pleadings he wished to file, (d) failure to review the discovery file with Ford, failure to advocate for Ford's interests, (e) failure to object to the habeas judge's findings of fact and conclusion of law, and (f) denial of access to the courts; and
>
> (6) Ford's conviction was the result of cumulative error.

(Doc. No. 1-1, at 1–4.)

Ford requests that his conviction be reversed and that he be allowed to "re-visit the phase of the proceedings" in which he was denied due process. *Id.* at 28.

### III.  Respondent's Answer

After being ordered to do so, Respondent filed an answer addressing Ford's petition. (Doc. No. 9.) Respondent maintains that Ford's petition is barred by the statute of limitations. *Id.*

### IV.  Ford's Reply

In his reply to Respondent's answer, Ford alleges that he is actually innocent of aggravated robbery with a deadly weapon, which is an equitable exception to the statute of limitations. (Doc. No. 14.)

## LEGAL STANDARD

The role of federal courts in reviewing habeas petitions filed by state prisoners is exceedingly narrow. A prisoner seeking federal habeas corpus review must assert a violation of a

3

federal constitutional right; federal relief is unavailable to correct errors of state constitutional, statutory, or procedural law unless a federal issue is also present. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *see also Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993). When reviewing state proceedings, a federal court will not act as a "super state supreme court" to review errors under state law. *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

Federal habeas review of state court proceedings is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996. Pub. L. 104-132, 110 Stat. 1214. Under the AEDPA, which imposed several habeas corpus reforms, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA imposes a "highly deferential standard for evaluating state court rulings," which demands that federal courts give state court decisions "the benefit of the doubt." *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted); *see also Cardenas v. Stephens*, 820 F.3d 197, 201–02 (5th Cir. 2016) ("Federal review under the AEDPA is therefore highly deferential: The question is not whether we, in our independent judgment, believe that the state court reached the wrong result. Rather, we ask only whether the state court's judgment was so obviously incorrect as to be an objectively unreasonable resolution of the claim."). Given the high deferential standard, a state court's findings of fact are entitled to a presumption of correctness and

a petitioner can only overcome that burden through clear and convincing evidence. *Reed v. Quarterman*, 504 F.3d 465, 490 (5th Cir. 2007) (citing 28 U.S.C. § 2254(e)(1)).

## DISCUSSION

### I. Timeliness Under the AEDPA

Title I of the AEDPA applies to all federal petitions for habeas corpus filed on or after April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 322, 326 (1997). Because Ford filed his petition after April 24, 1996, the AEDPA applies to his petition. Notably, Title I imposes a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). An inmate must file a section 2254 petition within one year of the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*See id.* § 2244(d)(1)(A)-(D).

Although the AEDPA provides four possible dates on which the limitation period may begin to run, the date on which the judgment became final is the only one relevant here. Generally, a case is final "when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally

denied." *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994); *see also Roberts v. Cockrell*, 319 F.3d 690, 693–95 (5th Cir. 2003). But the time-period for filing a habeas petition is tolled if a state habeas application, post-conviction motion, or other application for collateral review is pending. 28 U.S.C. § 2244(d)(2).

Here, Ford was sentenced on September 27, 2013. (Doc. No. 7-3, at 153.) Ford appealed the conviction to the Sixth Court of Appeals, which affirmed his conviction on February 27, 2015. (Doc. No. 7-23); *see also Ford v. Texas*, No. 12-13-00308-CR, 2015 WL 858811 (Tex. App.—Tyler Feb. 27, 2015, pet. ref'd). The Texas Court of Criminal Appeals subsequently denied discretionary review on July 29, 2015, and Ford did not file a petition for certiorari in the United States Supreme Court. (Doc. No. 7-1; Doc. No. 1, at 3); *see also Ford*, 2015 WL 858811 (Tex. App.—Tyler Feb. 27, 2015, pet. ref'd). So, Ford's conviction became final for purposes of federal habeas review on October 27, 2015, when the period for filing a petition for certiorari had expired. *See* 28 U.S.C. § 2101 ("The time for appeal or application for a writ of certiorari to review the judgment of a State court in a criminal case shall be as prescribed by rules of the Supreme Court."); U.S. Sup. Ct. R. 13.1 (A petition for writ of certiorari to review a state court judgment must be filed within 90 days after entry of the judgment). Therefore, the period for filing a federal habeas petition expired one year later on October 27, 2016, absent tolling. *See Caspari*, 510 U.S. at 390; 28 U.S.C. § 2244(d)(1)(A).

Further, although § 2244(d)(2) states that the limitations period is tolled while a state habeas application is pending, Ford did not file his first state habeas application until November 20, 2018—over two years after the expiration of the limitations period. (Doc. No. 8-10, at 29.) Therefore, Ford's post-conviction habeas applications have no tolling effect. *See Scott v. Johnson*,

6

227 F.3d 260, 263 (5th Cir. 2000) (state habeas applications that are filed after the expiration of the limitations period in § 2244(d)(2) do not toll the statute of limitations).

Ford did not file this federal habeas petition until February 21, 2023—over six years after the October 27, 2016 filing deadline. (Doc. No. 1, at 15); *see Spotville*, 149 F.3d at 378 (holding that for purposes of determining the applicability of the AEDPA, a federal petition is filed on the date it is placed in the prison mail system). As a result, his petition is untimely and barred by the statute of limitations, absent any equitable tolling.

## II.   Equitable or Statutory Tolling

Ford fails to allege any facts which would demonstrate that he is entitled to equitable tolling. The statute of limitations governing federal habeas petitions is subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 634 (2010) (holding that the AEDPA statute of limitations is subject to equitable tolling). The Fifth Circuit has long held that equitable tolling is available only in "rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1999); *Flores v. Quarterman*, 467 F.3d 484, 486 (5th Cir. 2006) (citing *Felder v. Johnson*, 204 F.3d 168, 170 71 (5th Cir. 2000) (citation omitted)).

Under the AEDPA, the one-year statute of limitations period may be equitably tolled only if Ford demonstrates that (1) "he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. *See Holland*, 560 U.S. at 649; *Palacios v. Stephens*, 723 F.3d 600, 604 (5th Cir. 2013). The Fifth Circuit has found that when a petitioner is "actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights" that rare and exceptional circumstances could exist. *See Flores*, 467 F.3d at 486 (quoting *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999)

(overturned on other grounds)). The petitioner has the burden to prove equitable tolling is warranted. *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000).

Here, nothing in the record suggests the State actively misled Ford about his case or prevented him from asserting his rights in a timely manner, so equitable tolling is not warranted. Moreover, "[i]n order for equitable tolling to apply, the applicant must diligently pursue his § 2254 relief." *Coleman*, 184 F.3d at 403. "[E]quity is not intended for those who sleep on their rights." *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999) (citing *Covey v. Ark. River Co.*, 865 F.2d 660, 662 (5th Cir. 1989)). In this case, Ford made no effort to challenge his guilty plea in a state or federal habeas petition until two years after his conviction became final. Thus, it cannot be said that he was diligent and equitable tolling is not warranted.

**III.   Actual Innocence**

To overcome the limitations bar, Ford asserts that he is actually innocent. Actual innocence, if proven, "serves as a gateway through which Ford may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). In other words, "'actual innocence' means factual innocence," and Ford must show "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). If actual innocence is proved, it serves as a gateway through which Ford may bypass a procedural bar, *i.e.*, the expiration of the statute of limitations, to have his constitutional claims heard. *McQuiggin*, 569 U.S. at 386, 392.

To have his constitutional claims considered on the merits, Ford must make a credible showing of actual innocence. *See Floyd v. Vannoy*, 894 F.3d 143, 154 (5th Cir. 2018). The Supreme Court has explained that tenable actual-innocence gateway pleas are rare. *McQuiggin*, 569 U.S. at 386. "[A]ctual innocence is established through demonstrating that, in the light of newly-

8

discovered evidence, 'it is more likely than not that no reasonable juror would have found Ford guilty beyond a reasonable doubt.'" *Floyd*, 894 F.3d at 155 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "A credible claim must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Id.* (quoting *Schlup*, 513 U.S. at 327).

Notably, neither the Supreme Court nor the Fifth Circuit has affirmatively defined what constitutes "new reliable evidence" under the *Schlup* actual-innocence standard. *Hancock v. Davis*, 906 F.3d 387, 389 (5th Cir. 2018). There is a circuit split among the other federal appellate courts, where the disagreement centers on whether the new reliable evidence for the purposes of the *Schlup* actual innocence gateway must be newly discovered, previously unavailable evidence, or, instead, evidence that was available but not presented at trial. *Id.* at 389 n.1. However, the Fifth Circuit has held that evidence is not "'new' under the *Schlup* actual-innocence standard if 'it was always within the reach of [Ford's] personal knowledge or reasonable investigation.'" *See id.* at 390 (citing *Moore v. Quarterman*, 534 F.3d 454, 465 (5th Cir. 2008)).

In determining whether Ford has made a credible showing of actual innocence, a court must scrutinize the likely impact of the overall, newly supplemented record on reasonable jurors, *i.e.*, both the evidence presented at trial and the newly discovered evidence. *See Floyd*, 894 F.3d at 155. Finally, "[a] court may consider how the timing of the submission and the likely credibility of [Ford's] affiants bear on the probable reliability of . . . evidence [of actual innocence]." *See McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 332).

In his reply to Respondent's answer, Ford cites to five pieces of evidence which he claims show that he was misidentified as the person who robbed the Complainant: (1) the Complainant told investigators and a local news media outlet that the assailant was a heavyset man and a

9

passenger in the sedan that pulled up alongside her; (2) Ford's jail and medical records show that he was not heavyset at the time of his arrest; (3) the prosecution's main witness, Tevin Dorsey, was also convicted in connection with the robbery and admitted that he was the passenger in the sedan; (4) an investigating officer testified at trial that Teven Dorsey, not Ford, was heavyset; and (5) the Complainant made a negative in-court identification of Ford as the assailant. (Doc. No. 14, at 9–11.)

Here, the court notes that none of the evidence that Ford relies on to support his claim is new. "New evidence" is evidence that was not presented at trial and remained unknown to the prosecution, defense, and fact finder throughout the trial. *Floyd*, 894 F.3d at, 156 (citing *Schlup*, 513 U.S. at 339); *see also House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met). But three of the five pieces of evidence Ford relies on are in-court testimony, which, by its nature, cannot be new evidence that was unavailable at trial. *See Floyd,* 894 F.3d at 156. Further, there is no reason to believe that Complainant's statements about the assailant's weight and Ford's medical/jail records were unavailable to the defense at the time of trial through the exercise of due diligence. *See Hancock v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018) ("Evidence does not qualify as 'new' under the *Schlup* actual-innocence standard if 'it was always within the reach of [Ford's] personal knowledge or reasonable investigation.'" (quoting *Moore*, 534 F.3d at 465).

Regardless, it is clear from the evidentiary record that Ford's trial counsel presented other evidence at trial which raised the issue of Ford's misidentification as the assailant—based specifically on height and weight discrepancies between Ford and the assailant. *See* (Doc. No. 8-10, at 191); (Doc. 7-12); (Doc. No. 7-13.) Thus, the issue of Ford's misidentification was properly before the jury, and any further evidence presented in that regard would have been cumulative. As

10

such, Ford has not set forth a claim of actual innocence sufficient to toll the AEDPA's statute of limitations. Ford's petition for writ of habeas corpus should therefore be dismissed as barred by the statute of limitations.

## IV. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 580 U.S. 100, 115 (2017). Instead, under 28 U.S.C. § 2253(c)(1), he must first obtain a certificate of appealability (COA) from a circuit justice or judge. *Id.* Although Ford has not yet filed a notice of appeal, the court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner need only show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Supreme Court recently emphasized that the COA inquiry "is not coextensive with merits analysis" and "should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck*, 580 U.S. at 773 (quoting *Miller-El*, 537 U.S. at 336). And when a district court denies relief on procedural grounds, "the petitioner seeking a COA must further show that

11

'jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012)).

Here, Ford failed to present a substantial showing of a denial of a constitutional right or that the issues he has presented are debatable among jurists of reason. He has also failed to demonstrate that a court could resolve the issues in a different manner or that questions exist warranting further proceedings. Accordingly, he is not entitled to a certificate of appealability.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Petitioner's federal habeas petition be **DENIED** as time barred, and that the case be **DISMISSED** with prejudice. It is also **RECOMMENDED** that Petitioner be denied a certificate of appealability *sua sponte*.

Within fourteen (14) days after service of the Magistrate Judge's Report, any party must serve and file specific written objections to the findings and recommendations of the Magistrate Judge. 28 U.S.C. § 636(b)(1)(C). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*,

79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 21st day of December, 2023.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE